```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT
- - - - - - - - - - - - - - - - - - - x
                                      :
UNITED STATES OF AMERICA,             :
                                      :
                                      :
            - v. -                    :    3:03CR190(JCH)
                                      :
RICARDO ETIENNE                       :
                                      :
- - - - - - - - - - - - - - - - - - - x
```

**GOVERNMENT'S DECEMBER 28, 2004 SUPPLEMENTAL MEMORANDUM**

**Preliminary Statement**

The United States of America (hereinafter "the Government") respectfully submits this supplemental memorandum of law. The Court directed the Government to file a brief addressing several issues: (1) whether hearsay evidence is admissible in 212(c) hearings; (2) whether non-conviction bad act evidence is admissible in 212(c) hearings; and (3) whether post-hearing factors can be considered in determined prejudice. Each of these issues is discussed in turn below.

**1.     Whether Hearsay Evidence is Admissible**

Hearsay is admissible in administrative immigration proceedings as long as the admission of evidence meets the tests of fundamental fairness and probity. <u>Felzcerek v. INS</u>, 75 F.3d 112, 115 (2d Cir. 1996) (hearsay evidence is admissible if it is probative and its use is fundamentally fair). See e.g. <u>U.S. ex rel. Vajtauer v. Commissioner of Immigration</u>, 273 U.S. 103 (1927); <u>U.S. ex rel. Bilokumsky v. Tod</u>, 263 U.S. 149 (1923). Although technically admissible, the affidavit of Marjorie Roc is not probative. The Government did not have an

opportunity to cross-examine Ms. Roc. One of the primary purposes of the right to cross-examine in any forum is that cross-examination is believed to insure the reliability and credibility of a witness' testimony. See 5 Wigmore, Evidence § 1367. Statements made in the affidavit were vague and conclusory.

Moreover, in light of inconsistencies in the pre-sentence report, there are serious credibility issues regarding the nature of the relationship between Ms. Roc and the defendant. Accordingly, the affidavit should be given little to no weight.

**2.    Whether Evidence of Non-Conviction
       Criminal Activity is Admissible**

Criminal activity that does not result in a convictions is properly considered in section 212(c) hearings. Matter of Grijalva, 19 I & N Dec. 713, 721-23 (BIA 1988) (holding that inasmuch as all relevant factors regarding an alien's arrest and conviction should be considered in cases involving discretionary relief, police reports concerning circumstances of arrest were appropriately admitted into evidence).

Courts of Appeals have similarly approved of the BIA's consideration of non-conviction criminal activity in its determination of whether section 212(c) relief is warranted. In Paredes-Urrestarazu v. INS, 36 F.3d 801 (9th Cir. 1994), the Ninth Circuit held that the Board properly considered the alien's narcotics arrest as a factor in adjudicating his request for section 212(c) relief, even though the

arrest never resulted in a conviction. See Id. ("The fact of arrest, insofar as it bears upon whether an alien might have engaged in underlying conduct and insofar as facts probative of an alien's "bad character or undesirability as a permanent resident" arise from the arrest itself, plainly can have relevance in performing the analysis required by section 212(c)."); see also, White v. INS, 17 F.3d 475, 480 (1st Cir. 1994) (certain charges that did not constitute "convictions," could be considered by the BIA "as some evidence weighing against discretionary relief,"); Henry v. INS, 74 F.3d 1, 5-7 (1st Cir. 1996) (recognizing that arrest reports that do not result in convictions are admissible in section 212(c) hearings); Esposito v. INS, 936 F.2d 911 (7th Cir. 1991), (alien's in absentia convictions may at the very least constitute probable cause to believe he is guilty of the crimes in question; similarly, pending murder charges are indicative of probable cause that he committed the murders and that "reasonable minds suspect that he is guilty of the crimes charged").

### 3. Whether Post-Hearing Factors Can Be Considered in Evaluating Section 212(c) Relief

To prove prejudice under 8 U.S.C. § 1326(d)(3), it is the defendant's burden to "show that, absent the procedural error he would not have been removed." Fernandez-Antonia, 278 F.3d at 159. See also United States v. Jiminez, 921 F. Supp. 1054, 1057 (S.D.N.Y. 19997) (rejecting collateral attack where defendant failed to demonstrate

3

that error in deportation proceeding would have led to "any possible relief from deportation"), aff'd, 131 F. 3d 132 (2d Cir. 1997) (summary order).  The case law is incredibly scant as to whether the merits of defendant's claims should be considered as of the time of the IJ's hearing or whether subsequent factors – both positive and negative – can be considered by a district court whose role it is to prognosticate whether it is reasonably likely that the defendant would have obtained section 212(c) relief.

On the one hand, the case law seems to indicate that the district court should consider the issue as of the date of the IJ's hearing. See U.S. v. Figueroa-Taveras, 228 F. Supp.2d 428, 433 (S.D.N.Y. 2002) ("We consider the merits of Defendant's claim from the standpoint of an immigration judge at the time of Defendant's original deportation.") rev'd on other grounds 2003 WL 21655239 (2d Cir. 2003) (unpublished summary order); see also U.S. v. Sosa, ___ F.3d ___ (2d cir. 2004) ("An alien is prejudiced by a fundamental procedural error 'where there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted Section 212(c) relief.'").

On the other hand, the Second Circuit has recognized that changing equities during the pendency of an immigration hearing must be taken into account. See Buitrago-Cuesta v. INS, 7 F.3d 291 (2d Cir. 1993).  Accordingly, at the very least, the test should not be as of the time of the hearing before the IJ but rather it should be as of

4

the time of the alien's final order of removal.  Here, Etienne waived his appeal to the BIA.  Therefore, his immigration hearing effectively ended as of the time that his order became final.

The Government submits, however, that subsequent evidence is relevant to the issue of credibility.  Credibility is not an element of any offense crime and in many cases it affects the probative force of the testimony.  Accordingly, the Government should not have been precluded from exploring subsequent relevant evidence pertaining to the aliens credibility.  Cf. United States v. Abel, 469 U.S. 45, 105 S.Ct. 465, 469 (1984) ("finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.").  Here, the subsequent evidence of a criminal arrest for possession of a controlled substance directly call into question Etienne's statement under oath that he is rehabilitated.  Moreover, his statements regarding the continued use of marijuana from 2000 until 2003 further undercut his credibility with regard to his rehabilitation.  Finally, the inconsistencies between Etienne and Ms. Roc regarding the nature of their relationship after he illegally re-entered the United States raise serious doubts about the nature and circumstances of their relationship.

**4.   Etienne Cannot Show a Reasonable Likelihood of 212(c) Relief**

Etienne claims that, had he applied for § 212(c) relief, he would have likely received it because (1) he had resided in this country

since 1985 until his deportation in 2000; (2) his deportation would cause hardship to his family, to whom he allegedly provided emotional and financial support; and (3) that his deportation would cause hardship to himself.

Etienne's strongest equity is that he came to this country as a minor and had lived here consistently for fifteen years. As the case law clearly establishes, this fact alone - especially in light of Etienne's extensive criminal history - is clearly not have been enough to merit Section 212(c) relief.

To guide immigration judges who considered Section 212(c) relief applications, the BIA articulated a set of factors for the judges to consider in <u>Matter in Marin</u>, 16 I. & N. Dec. 581 (BIA 1978). This test, which the Second Circuit adopted in <u>Lovell v. INS</u>, 52 F. 3d 458 (2d Cir. 1995), was designed to balance the "alien's undesirability as a permanent resident" against "the social and humane considerations presented in his behalf." <u>Marin</u>, 16 I. & N. Dec. at 584-85. Among the factors weighing in favor of Section 212(c) relief were the following:

- family ties within this country;
- residence of long duration in this country;
- evidence of hardship to the alien and alien's family upon deportation;
  armed forces service;
- employment history;

- community service;
- property or business ties;
- evidence attesting to good character; and
- in the case of one convicted of criminal conduct, proof of genuine rehabilitation.

<u>Marin</u>, 16 I. & N. Dec. at 585. Among the factors weighing against discretionary relief were the following:

- the nature and circumstances of the exclusion ground at issue;
- the presence of additional immigration law violations;
- the existence of a criminal record and its nature, recency, and seriousness; and
- the presence of other evidence indicative of an alien's bad character or undesirability as a permanent resident.

<u>Id</u>. at 584; <u>see also</u> <u>Douglas v. INS</u>, 28 F.3d 241 (2d Cir. 1994); <u>Arango-Arandondo v. INS</u>, 13 F.3d 610, 613 (2d Cir. 1994); <u>Henry v. INS</u>, 8 F.3d at 432.

Not all factors were accorded equal weight. As the BIA noted in <u>Marin</u>, "[o]ne or more of the [] adverse considerations may ultimately be determinative of whether section 212(c) relief is in fact granted in an individual case." 16 I. & N. Dec. at 584. The BIA took the position, moreover, that "as an alien's crimes bec[a]me more serious, there [would] be less likelihood that he or she [would] be able to

7

establish that a favorable exercise of discretion is warranted." Matter or Burbano, 20 I. & N. Dec. 872 (BIA 1994). The burden is particularly stringent, where, as is the case here, the alien is convicted of a narcotics offense was particularly heavy. As the BIA stated in Burbano, such an alien would

> face a difficult task in establishing that he or she merits discretionary relief. The detrimental effect on society resulting from drug violations has been consistently recognized by Congress in the clear distinctions that have been drawn between drug offenses and other crimes and the disparate treatment that has been accorded to different types of criminals... The immigration law disfavors drug offenders by subjecting them to exclusion and deportation from this country and by limiting their eligibility for the various forms of relief from exclusion and deportation. This is particularly true of aliens whose drug offenses constitute aggravated felonies under the [Immigration and Naturalization] Act.

Id. at 878-79.

Indeed, this Circuit has recognized the especially heavy burden imposed on an aliens with drug convictions. See Montilla v. INS, 926 v. INS, 926 F.2d at 170. Drug offenders must demonstrate unusual or outstanding equities to merit positive consideration for section 212(c) relief, see Correa v. Thornburgh, 901 F.2d 1166, 1170 (2d cir. 1990), but even such outstanding equities are not sufficient by themselves to warrant relief. See, e.g., Kim Sang Chow v. INS, 12 F.3d at 39; Cordoba-Chaves v. INS, 946 F.2d 1244, 1247 (7th cir. 1991); Shahandeh-Pey v. INS, 831 F.2d 1284, 1389 97th Cir. 1987); Matter of Buscemi, 19 I & N. Dec. at 633-34.

Etienne's significant criminal history would likely have foreclosed his ability to obtain relief for deportation. At the time of his deportation hearing, Etienne had been convicted two separate convictions in 1995 for sale of narcotics, a 1996 conviction for larceny in the fifth degree, and a 1997 conviction for possession of narcotics. The 1996 and 1997 arrests and convictions both occurred while he was on probation. In addition to these convictions, the Government has submitted a rap sheet and police reports relating to a 1991 arrest for kidnaping in the first degree, conspiracy to commit sexual assault and criminal attempt to commit sexual assault, a 1994 arrest for conspiracy to commit larceny, and a 1997 arrest for criminal trespass and burglary. Under Lovell, Etienne faced a heavy burden to counterbalance the negative impact of these convictions. See Lovell, 52 F. 3d at 462 ("Where... an alien is deportable by reason of two narcotics convictions, the alien must make a showing of unusual or countervailing equities to obtain a waiver of deportation."); Sanchez-Peralta, 1998 WL 63405, at *14 (drug offenders must demonstrate "unusual or outstanding equities" in order to obtain relief from deportation under Section 212(c); United States v. Crown, No. 99 Cr. 1044 (AGS), 200 WL 364890, at *3 (S.D.N.Y. Apr. 10, 2000) (same).

Moreover, Etienne cannot claim to have had a steady employment history in the United States. Etienne testified that he provided financial and emotional support to his family in this country but he

provided no evidentiary support for these two factors. In fact, since Etienne had been incarcerated from 1997 until 2000 when he was deported. During this time he was not providing any financial support to his family. By his own admission, Etienne began a relationship with Ms. Roc in 1993. From at least 1995 until 2000, the Government submits that Etienne was supplementing his income by selling narcotics. This is certainly not the type of financial support to be considered an equity for section 212(c) consideration.

Etienne's legitimate employment record can hardly be described as stable or long-standing, and his claim that he had primary responsibility for supporting his children seems untenable. Etienne also admitted to only filing tax returns twice during this period of time. There has been no corroborating documentary evidence submitted in support of his self-serving claims. There are no letters from any employers and no specifics from Ms. Roc as to the amount of financial contribution that was provided by Etienne. Accordingly, these assertions should not be credited in support of his claim that there was a reasonable likelihood that he would have received Section 212(c) relief.

Etienne did claim to be rehabilitated and in support of his claims provided certificates of drug treatment programs that he completed while in prison. "[A]pplicants for section 212(c) relief who have criminal records will ordinarily be required to make a showing of rehabilitation." Matter of Marin 16 I & N Dec. at 878.

10

For the reasons discussed above, Etienne's credibility about his statement that he is rehabilitated is seriously in doubt. Even were this Court not to consider the credibility issues, Etienne's belated attempt at rehabilitation given his clear recidivist criminal history cannot be considered unusual or outstanding.

At the hearing, the Government was limited in its ability to question the defendant about the nature and circumstances of all of his criminal activity; specifically, the criminal arrests for which he was not convicted. When the Government probed about his criminal activity, the defendant either asserted his right to self-incrimination or claimed that any discussion of the criminal activity may be used as 404 material in his pending state case where he is charged with possession and forgery.

The defendant did not express remorse for committing the crimes nor did he admit his involvement in these crimes. See generally Miranda de Gonzalez v. INS, 996 F.2d 804, 811-12 (6th Cir. 1993) (BIA rationally determined alien not rehabilitated where alien refused to accept guild for drug offense); Palacios-Torres v. INS, 995 F.2d at 99-100 ("applicant's remorse and admission of guilt" and "candor in answering questions at the deportation hearing" are "relevant to the ultimate question of whether [he] is at risk of recidivism"); Gouveia v. INS, 980 F.2d 814, 818 (1st Cir. 1992) (aliens denial of culpability was "'indicative of [his] failure to take responsibility for his

actions, a necessary first step.. . in attaining true rehabilitation'").

The fact that Etienne committed at least two crimes while on probation is clearly proof of recidivism and a lack of rehabilitation. See Henry v. INS, 8 F.3d 426, 433 n. 8 (7th Cir. 1993) (given strong evidence suggesting alien's lack of rehabilitation – i.e., alien's subsequent drug offense – "it is unlikely that the Board would have exercised its discretion in [his] favor even if it had not required him to establish unusual or outstanding equities.")).

Even if Etienne's claims regarding his employment history and family responsibilities are given weight by this Court, they simply cannot outweigh the negative impact of his criminal history, or compensate for the absence of any other positive factor. Significantly, Etienne did not, and could not, claim any other positive factors listed in Marin, or otherwise.  Etienne has claimed no armed forces service; no community service; and no property or business ties.

Decisions from the BIA and the Second Circuit make plain that, prior to the enactment of AEDPA, a petitioner's prior drug conviction and lack of rehabilitation would led to a denial of Section 212(c) relief, regardless of claims such as those that Etienne made, i.e., longtime residency and strong family ties in this country.  See Lovell, 52 F. 3d at 461-62 (denying petition to review BIA's denial of § 212(c) relief; evidence of stable employment history and strong

family ties to the United States did not outweigh the petitioner's two prior drug trafficking convictions); Arango-Aradondo v. INS, 13 F. 3d 610, 613 (2d Cir. 1994) (longtime residency and close family ties in United States, evidence of drug and alcohol rehabilitation, lack of ties to the hardship endured in native Colombia, and HIV status did not outweigh petitioner's lengthy criminal record, sporadic employment history, and failure to pay taxes); Matter of Burbano, 20 I. & N. Dec. 872, 875-76 (BIA 1994) Section 212(c) relief not warranted where petitioner had extensive criminal history, despite 10-year residency and strong family ties in United States, including presence of mother and four siblings here; "[n]either [the relatives'] testimony nor any other evidence of record indicates that the adverse effect of deportation upon the respondent and his family will exceed that typically suffered by a family in this situation" and "the respondent's equities in this country, while significant, are insufficient to overcome his numerous criminal convictions"); Matter of Edwards, 20 I. & N. Dec. 191, 197-98 (BIA 1990) (Section 212(c) petition denied despite (i) 22-year residency in United States, (ii) marriage to U.S. citizen, (iii) four U.S. citizen children, (iv) lack of family ties to Barbados, petitioner's native country, and (v) evidence of hardship family would suffer if petitioner were deported; relief not warranted in light of petitioner's criminal history, which spanned ten years and included controlled substance offenses, and lack of rehabilitative efforts).

Indeed, given the BIA's position on the seriousness of prior drug convictions, an immigration judge's grant of a Section 212(c) application in this case would be subject to reversal. The immigration judge in Matter of Roberts, 20 I. & N. Dec. 294 (BIA 1991), for example, granted relief under Section 212(c), despite the petitioner's prior conviction for the sale of cocaine. The BIA reversed, noting that the prior conviction was an "extremely serious adverse factor" that required the alien to demonstrate unusual or outstanding equities, and that petitioner's 12-year residency and significant family ties in this country were not enough to make the required showing. Id.

Thus, it is not reasonably likely that Etienne would have received relief from deportation based solely on his longtime residency in the United States, and his unsupported claims of a stable employment history and familial responsibilities in this country. Indeed, it is extremely unlikely that he would have received such relief. That is because in cases the alien's equities in terms of long term residence and family ties has been stronger than Etienne's the BIA has denied section 212(c) relief and such denials have consistently been upheld as reasonable. See e.g., Douglas v. INS, 28 F.3d 241 (upholding denial of section 212(c) relief to 20-year resident since age 16 who was father of two U.S. citizen children); Arango-Aradondo v. INS, 13 F.3d at 611, 613 (upholding denial of 212(c) relief to 27-year resident who had tested HIV positive);

Miranda de Gonzalez v. INS, 996 F.2d at 808-09, 811-12 (upholding denial of 212(c) relief to alien who was 18-year resident of U.S. and who had three citizen children, history of charitable work and good behavior in prison); Casalena v. U.S. INS, 984 F.2d 105, 106 (4th Cir. 1993) (upholding denial of 212(c) relief to 32-year resident since age ten with U.S. citizen parents); Ashby v. INS, 961 F.2d 555, 556 (5th Cir. 1992) (upholding denial of 212(c) relief to alien with 29 years' residence in U.S. since age two, and whose mother and two citizen siblings resided in U.S.); Cordoba-Chaves v. INS, 946 F.2d at 1245-46 (upholding denial of 212(c) relief to alien with 25 years' residence in U.S. since age five whose parents, four siblings, wife and child were U.S. citizens); Ayala-Chavez v. INS, 944 F.2d 638, 640-42 (upholding denial of 212(c) relief to alien with 18 years' residence whose parents and siblings lived in U.S. and whose minor daughter was U.S. citizen); Cobourne v. INS, 779 F.2d at 1565-67 (upholding denial of 212(c) relief to alien convicted of unlawful sale of marijuana, even though alien's wife and children were in U.S. and he had been lawful permanent resident for 13 years).

**CONCLUSION**

The Court should deny Etienne's motion to dismiss in its entirety.

Dated:   New Haven, Connecticut
         December 28, 2004

                                    Respectfully submitted,

                                    KEVIN O'CONNOR
                                    United States Attorney for the
                                    District of Connecticut
                                    Attorney for Respondent


                            By:     _____
                                    JAMES J. FINNERTY
                                    ASSISTANT UNITED STATES ATTORNEY


                            For:    KRISHNA R. PATEL (ct24433)
                                    Assistant United States Attorney
                                    157 Church Street -- 23rd Floor
                                    New Haven, Connecticut 06510
                                    Telephone:  (203) 821-3753

**<u>CERTIFICATE OF SERVICE</u>**

    This is to certify that the foregoing was federal expressed on December 28, 2004 to the following:

        Thomas Belsky, Esq.
        Federal Public Defender's Office
        2 Whitney Ave., Suite 300
        New Haven, CT  06510


By: _____
    JAMES J. FINNERTY
    ASSISTANT UNITED STATES ATTORNEY

For: KRISHNA R. PATEL
     ASSISTANT UNITED STATES ATTORNEY