UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA, | : | |
|---|---|---|
| | : | CRIMINAL NO. |
| v. | : | 3-03-cr-190 (JCH) |
| | : | |
| RICARDO ETIENNE, | : | |
| | : | JANUARY 14, 2005 |

**RULING ON DEFENDANT'S MOTION TO RECONSIDER COURT'S RULING
DENYING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 40]**

The defendant, Ricardo Etienne, has been indicted under sections 1326(a) and

1326(b)(2) of Title 8 of the United States Code for unlawful reentry of a removed alien.

The indictment charges that, on or about April 29, 2003, Etienne, an alien who had

previously been deported to Haiti from the United States on or about August 14, 2000,

was found in Stamford, Connecticut without the express consent of the Attorney

General of the United States. [Dkt. No. 1].  In his January 5, 2004 Motion to Dismiss

[Dkt. No. 13], Etienne collaterally attacked the December 1999 deportation proceedings

as fundamentally unfair and depriving him of due process.  In the alternative, Etienne

moved the court to construct the indictment as stating a 8 U.S.C. § 1326(a) offense

only.  Def.  Mem. In Supp. of Mot. To Dismiss [Dkt. No. 14].  The government refuted

the defendant's arguments, contending that the current indictment and the prior

deportation order are both valid.  Gov't Mem. In Opp. Of Mot. To Dismiss [Dkt. No. 20].

On June 23, 2004, this court denied defendant's motion. [Dkt. No. 31] On July

28, Etienne entered a conditional plea of guilty, which he moved to withdraw on August

10, 2004.  The plea having been taken by the Magistrate Judge and not yet accepted

by the District Court at the time Etienne made his Motion to Withdraw, Etienne was

entitled as of right to do so.  See FED. R. CR. P. 11.  Thus, the court grants the motion to withdraw the plea.

On September 30, 2004, Etienne made the instant motion, asking that the court reconsider its June 23, 2004 Ruling denying the motion to dismiss.  Etienne claims that new case law in the Second Circuit supports his prior arguments in favor of his collateral attack on the 1999 proceedings that resulted in his deportation and, thus, warrants dismissal of the indictment.  After further briefing, at an evidentiary hearing on December 21, 2004, both the government and the defendant presented evidence and argument with respect to this court's determination whether a reasonable probability existed that Etienne would have received relief under section 212(c) had such a proceeding been made available to him.  The parties then submitted supplemental briefing regarding the admissibility of various types of evidence in this court's consideration of that question.

## I.      BACKGROUND

Etienne, a citizen of Haiti, entered the United States as an immigrant on or about July 14, 1980.  On December 20, 1995, he pled guilty to possession with intent to distribute 1.9 grams of cocaine base.  He was convicted and received a sentence of five years probation.  On October 17, 1997, Etienne pled guilty to possession of a narcotic.  He was convicted and sentenced to four years incarceration.

On the basis of the 1995 conviction, the Immigration and Naturalization Service ("INS") instituted deportation proceedings against Etienne on April 16, 1999.

Proceedings were held before an Immigration Judge.  Etienne was represented by counsel during the proceedings.  Through counsel, Etienne submitted written pleadings, which, inter alia, admitted the basis for the deportation, acknowledged the right to appeal, requested no relief from the deportation order, and designated Haiti as the country for removal.  At the final hearing on December 9, 1999, the Immigration Judge ruled that Etienne was subject to removal and, further, that he was not eligible for any relief from removal.  Then, the Immigration Judge expressly asked Etienne's counsel if there would be an appeal.  Counsel answered that there would not be an appeal and that any appeal was waived.

On August 14, 2000, Etienne was deported to Haiti.  On August 10, 2004, he filed a motion to reopen his immigration proceedings.  That motion was denied on August 27, 2004.  On September 27, 2004, Etienne filed a notice of appeal with the Board of Immigration Appeals ("BIA").

## II.    STANDARD

Etienne asks this court to reconsider its denial of his motion to dismiss the indictment.  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  In the instant case, Etienne points to a recent Second Circuit decision that bears directly on the basis for this court's denial of his original motion to

dismiss the indictment.  United States v. Copeland, 376 F.3d 61 (2d Cir. 2004).  That

decision is "controlling."  Shrader, 70 F.3d at 257.  Furthermore, Copeland was followed

by other Second Circuit cases that hold that a potential deportee's uninformed and

involuntary waiver of his right to appeal may excuse the requirement under section

1326 that he exhaust administrative remedies.  United States v. Calderon, 391 F.3d

370, 371 (2d Cir. 2004); United States v. Sosa, 387 F.3d 131 (2d Cir. 2004).  Therefore,

it "might reasonably be expected to alter the conclusion reached by th[is] court" to deny

Etienne's original motion to dismiss based on his failure to exhaust administrative

remedies.  Id.; see United States v. Etienne, No. 3-03-CR-190 (JCH), 2004 WL

1431705 (June 23, 2004).

Rule 12(b) of the Federal Rules of Criminal Procedure requires that, prior to trial,

a defendant raise any defenses or objection based on defects in the indictment and

make motions to suppress evidence or request discovery.  United States v. Crowley,

236 F.3d 104, 108 (2d Cir. 2000).  Rule 12(b) further provides that a motion to dismiss

may raise "any defense, objection, or request which is capable of determination without

the trial of the general issue . . . ." F.R.C.P. 12(b).  "The general issue in a criminal trial

is, of course, whether the defendant is guilty of the offense charged."  United States v.

Doe, 63 F.3d 121, 125 (2d Cir.1995).  "Thus, on a Rule 12(b) motion, a court assesses

the legal sufficiency of an indictment without considering the evidence the Government

may introduce at trial."  United States v. Al-Marri, 230 F. Supp. 2d 535, 538 (S.D.N.Y.

2002) (citing United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1988)).

4

## III.   ANALYSIS

A successful collateral attack of a prior deportation order under 8 U.S.C. §

1326(d) requires that a defendant demonstrate that:

(1)   he exhausted any administrative remedies that may have been available to seek relief against the order;

(2)   the deportation proceedings at which the order was issued improperly denied the alien of the opportunity for judicial review; and

(3)   the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).  These requirements are conjunctive and, therefore, the defendant

must establish all three in order to successfully challenge his removal order.  United

States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2001).  Upon consideration of

defendant's original motion to dismiss, this court concluded that Etienne's failure to

exhaust the administrative remedies which were available to him after the deportation

proceedings precluded him from attacking those proceedings, and the resulting order,

as unfair.  Moreover, the court found that Etienne could not attack that earlier conviction

on the basis of ineffective assistance of counsel in light of his failure to raise the issue,

in the first instance, to the BIA.  Having found that Etienne failed to exhaust available

administrative remedies, this court did not reach the question of whether Etienne could

meet the other requirements of section 1326(d).

The court is compelled to revisit its earlier conclusion that Etienne failed to

exhaust administrative remedies.  That decision is called into serious doubt by the

recent Second Circuit case law that compels this court to reconsider its previous ruling.

5

**A.    The <u>Copeland</u> and <u>Sosa</u> Cases**

Etienne argues that the order of deportation was fundamentally unfair and was the result of a proceeding that deprived him of due process of law.  Etienne cites to new Second Circuit case law in support of its contention that this court ought to reconsider its previous denial of his motion to dismiss the indictment.

On July 16 and October 21 of this year, the Second Circuit handed down two rulings that are relevant to Etienne's motion to dismiss.  <u>United States v. Copeland</u>, 376 F.3d 61 (2d Cir. 2004); <u>United States v. Sosa</u>, 387 F.3d 131 (2d Cir. 2004).  In <u>Copeland</u>, the Second Circuit found that an alien's untimely motion to reopen a deportation hearing and appeal from a denial of that motion could satisfy the exhaustion requirement.  376 F.3d at 67.  In addition, the Second Circuit concluded that, "where habeas review is potentially available, an opportunity for judicial review will still be deemed to have been denied where the interval between entry of the final deportation order and the physical deportation is too brief to afford a realistic possibility of filing a habeas petition."  <u>Id.</u> at 68.  The opportunity for judicial review will also be deemed denied where legal uncertainties render such review unavailable.  <u>Id.</u> at 69.  In <u>Copeland</u>, the relevant time period was just under two years, between November 27, 1996, the entry of a final deportation order, and November 24, 1998, the date of the defendant's deportation.  <u>Id.</u>  Lastly, the Second Circuit found that "a failure to advise a potential deportee of a right to seek Section 212(c) relief can, if prejudicial, be fundamentally unfair within the meaning of Section 1326(d)(3)."  <u>Id.</u> at 71.

6

In October, the Second Circuit held that "the exhaustion requirement [under Section 1323(d)] must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." Sosa, 387 F.3d at 136. More recently, on December 1, 2004, the Second Circuit applied the holding in Sosa to a defendant facing a criminal charge of attempted illegal reentry. United States v. Calderon, 391 F.3d 370 (2d Cir. 2004). Like Etienne, the defendant in that case collaterally attacked the deportation order on which the charge of attempted illegal reentry was predicated. The Second Circuit, affirming the District Court, found that Calderon was excused from satisfying section 1326(d)(1), because his "waiver of administrative review was not knowing and intelligent." Id. at 371. It is clear that these cases provide ample basis for this court to reconsider its previous ruling on Etienne's motion to dismiss the indictment.

**B.    Exhaustion**

In denying Etienne's original motion to dismiss, this court rejected his contention that it ought to follow Ninth Circuit authority that "failure to exhaust cannot bar collateral review of a deportation proceeding when the waiver of the right to an administrative appeal was not considered and intelligent." United States v. Ubaldo-Figueroa, 347 F.3d 718, 726 (9th Cir. 2003); United States v. Leon-Paz, 340 F.3d 1003, 1005-06 (9th Cir. 2003). Recently, however, the Second Circuit adopted the rule followed by the Ninth Circuit. Sosa, 387 F.3d at 137 (holding that "the exhaustion requirement must be excused where an alien's failure to exhaust results from an invalid waiver of the right to

an administrative appeal" and noting that "[t]he Ninth Circuit has adopted this rule, albeit using slightly different reasoning."). The Second Circuit found that an alien's explicit waiver of his right to an administrative appeal "was not knowing and intelligent" where he "was not informed of his right to apply for Section 212(c) relief." Id.; see also Calderon, 391 F.3d at 371. Therefore, where an alien is not informed of his right to apply for such relief, the exhaustion requirement is waived.

Upon consideration of the Second Circuit's clarification of section 1326(d)'s exhaustion requirement, this court finds that the exhaustion requirement does not apply to the defendant in this case. As in Sosa, the defendant's waiver of his right to an administrative appeal could not be "knowing and intelligent" where he "was not informed of his right to apply for Section 212(c) relief." Sosa, 387 F.3d at 137. Therefore, the court must consider the remaining requirements under section 1326(d) that the defendant must meet in order to mount a successful collateral attack upon the 1999 deportation proceedings.

### C.    Opportunity for Judicial Review

As in Sosa and Copeland, the only available judicial review of the deportation proceedings against Etienne was through a habeas petition. Sosa, 387 F.3d at 137. In the Second Circuit, "where habeas review is potentially available, an opportunity for judicial review will still be deemed to have been denied where the interval between entry of the final deportation order and the physical deportation is too brief to afford a realistic possibility of filing a habeas petition." Copeland, 376 F.3d at 68. Timing,

8

however, is but one possible basis for finding that a reasonable opportunity for judicial

review did not exist.  In addition, legal uncertainties regarding the availability of review

may render judicial review of a deportation proceeding unavailable to an alien.  Id. at

69.

Eight months passed between the entry of a final order of deportation against

Etienne and his actual deportation to Haiti.  The length of time between the final order

of deportation against Etienne lies somewhere between the lengths of times discussed

in relevant circuit precedent.  The Second Circuit has found that the opportunity for

judicial review, in the form of habeas review, existed in a case where the defendant was

deported about ten months after the final entry of an order of deportation against him.

United States v. Gonzalez-Roque, 301 F.3d 39, 44 (2d Cir. 2002).  Where the physical

deportation took place about a month after final entry to the final deportation, the

Second Circuit has found that judicial remedies simply were not available. Sosa, at 137-

38.

The realistic ability of an individual detained or imprisoned while awaiting

deportation to access judicial review of his deportation order ought not to be

overestimated.  This court does not, however, reach the question of whether eight

months, taken alone, is a sufficient period of time in which Etienne had a reasonable

opportunity for judicial review.  Instead, the court finds that as with Copeland, who

waited almost two years to file an administrative appeal of his deportation order,

Etienne's ability to access review of his deportation order was compromised by the

state of the law at the time of his confinement prior to deportation.  His access to relief

under section 212(c) was compromised by the Board of Immigration Appeals'

interpretation of the Anti-Terrorism and Effective Death Penalty Act, limiting section

212(c) relief even for those aliens whose guilty pleas preceded the enactment of the

statute.  The Supreme Court did not rule on the ability of individuals ordered deported

on the basis of having plead guilty to criminal offenses prior to 1996 until after Etienne

had been deported.  See INS v. St. Cyr, 533 U.S. 289 (2001).  Moreover, habeas

review was likely contingent upon exhaustion of potential administrative remedies, and

administrative remedies appeared to be unavailable and, in any event, were waived by

Etienne's counsel's at the deportation proceeding.  Thus, the failure to apprise Etienne

of his rights under section 212(c) compromised both his access to administrative

remedies as well as his access to judicial review.  Lastly, resort to administrative

remedies, assuming that they were available, may have delayed Etienne's ability to

access habeas review because those remedies may not have been exhausted until

after Etienne's deportation, at which time his ability to access habeas review would

have been legally and practically compromised given his access to resources and the

difficulty of meeting the "in custody" requirement of federal habeas statutes.  See 28

U.S.C. §2241.

Alternatively, Etienne argues that he had no opportunity for judicial review

because his counsel was ineffective.  In the original ruling on the Motion to Dismiss, this

court declined to consider that argument because it had not first been brought before

10

the Board of Immigration Appeals, as required by <u>Arango-Aradondo v. INS</u>, 13 F.3d

610, 614 (2d Cir. 1994). The requirement that the BIA be given the opportunity to

address such a claim prior to it being brought in this court is prudential rather than

jurisdictional. <u>Id.</u>; see also <u>Rabiu v. I.N.S.</u>, 41 F.3d 879, 882 (2d Cir. 1994) ("the BIA

does not have jurisdiction to decide constitutional issues, but for prudential reasons the

ineffectiveness claim should be heard in the first instance by the BIA.") "[T]he vehicle

commonly used to redress claims of ineffective assistance of counsel in deportation

proceedings has been an administrative motion to reopen proceedings." <u>Iavorski v.

I.N.S.</u>, 232 F.3d 124, 129 (2d Cir. 2000). Following this court's June 25, 2004 Ruling,

Etienne did move to reopen proceedings before the BIA. The IJ denied that motion as

moot. Order of the Immigration Judge [Dkt. No. 40, Ex. E]. In the course of a short

opinion regarding that motion, the IJ concluded, "the <u>St. Cyr</u> decision was not issued in

the 2nd Circuit until after the removal order. There is no basis to ineffective assistance

of counsel claim." <u>Id.</u> The prudential reasons underlying <u>Arango-Aradondo</u> do not

compel the court to abstain from considering the issue in this case. Etienne attempted

to exhaust his administrative remedies by providing an opportunity for the BIA to

adjudicate his ineffective assistance claim. The IJ considered the facts available. As in

<u>Rabiu</u>, "the facts that form the basis for the issue before us were considered by the

BIA." <u>Rabiu</u>, 41 F.3d at 882. The IJ found that Etienne's counsel had not been

ineffective for failing to file an application for 212(c) relief because at the time, prior to

the Second Circuit's ruling in <u>St. Cyr</u>, the law appeared to be unequivocal that Etienne

11

was not eligible for such relief.  The court, therefore, may reach the merits of Etienne's claim that counsel was ineffective.

The Second Circuit has concluded that where the "failure of an attorney to file a § 212(c) application on his client's behalf rose to the level of ineffective assistance of counsel because a competent attorney would have filed such a motion, there was a prima facie showing of eligibility for § 212(c) relief, and the alien could have made a strong showing in support of his application" an opportunity for judicial review did not exist. United States v. Perez, 330 F.3d 97, 101 (2d Cir. 1993) (internal citations and quotations omitted).  According to an affidavit filed by Etienne's immigration attorney, he believed that "Etienne had no legitimate claim for relief from removal."  Affidavit of Robert A. Maresca, Esq. [Dkt. No. 24, Ex. D].  Accordingly, Etienne was not informed of the possibility of relief from removal by either the IJ or his attorney.  Affidavit of Ricardo Etienne [Dkt. No. 14, Ex. A].  As in Perez and Rabiu, in the instant case no section 212(c) application was filed.

The failure of an attorney to file a section 212(c) application where he is directed to do so by his client is clear evidence of incompetence for the purposes of Rabiu. Failure by an attorney to inform his client of the availability of section 212(c) relief, where such relief may save his client from the harsh penalty of deportation, also evidences incompetence.  As is the case with lawyers representing individuals who have been convicted of crimes, the failure to consult with a client regarding the availability of review of an administrative or judicial determination can constitute

12

ineffective assistance of counsel.  <u>Roe v. Flores-Ortega</u>. 528 U.S. 470 (2000).  In the

criminal context, "counsel has a constitutionally imposed duty to consult with the

defendant about appeal when there is reason to think either (1) that a rational

defendant would want to appeal (for example, because there are non-frivolous grounds

for appeal), or (2) that this particular defendant reasonably demonstrated to counsel

that he was interested in appealing." <u>Flores-Ortega</u>, 528 U.S. at 480 (2000).  In the

instant context, a rational alien would want to apply for section 212(c) relief.  There

were certainly non-frivolous grounds for Etienne to do so.[1]  Moreover, as discussed

below, Etienne "could have made a strong showing in support of his application." <u>See</u>

discussion, <u>infra</u>, section III.D.

Therefore, Etienne has established the elements of ineffective assistance of

counsel for the purposes of meeting the second prong of a collateral attack on an order

of deportation.  Nevertheless, the court need not reach a resolution of Etienne's

ineffective assistance of counsel claim.  As discussed above, there are sufficient

grounds on which to find that Etienne was denied the opportunity for judicial review.

Having considered all relevant facts, including Etienne's length of stay in the

United States following entry of a final order of deportation against him, and legal

considerations, including the state of the law at the time, the court finds that Etienne

has demonstrated that "the deportation proceedings at which the [deportation] order

---

[1]One might argue, as the IJ did, that such failure does not evidence incompetence
because of the confused state of the law at the time.  Such an argument supports the court's
finding that no opportunity for judicial review existed because of the uncertain state of the law.

was issued improperly denied the alien of the opportunity for judicial review."  8 U.S.C.

§1326(d)(2).  Therefore, the court moves to the consideration of whether "entry of the

order was fundamentally unfair."  8 U.S.C. §1326(d)(3).

### D.    Fundamental Unfairness

It is clear under Copeland that "a failure to advise a potential deportee of a right

to seek section 212(c) relief can, if prejudicial, be fundamentally unfair within the

meaning of Section 1326(d)(3)."  Copeland, 376 F.3d at 71.  This court must next

consider, therefore, whether Etienne was prejudiced by the immigration judge's failure

to inform him of his rights under section 212(c).

"Whether Section 212(c) relief would have been granted is determined by

balancing 'the adverse factors evidencing an alien's undesirability as a permanent

resident with the social and humane considerations presented in his behalf to

determine whether the granting of section 212(c) relief appears in the best interest of

this country."  Sosa, 387 F.3d at 138 (quoting Matter of Marin, 16 I. & N. 581, 584 (BIA

1978)); Lovell v. INS, 52 F.3d 458, 461 (2d Cir. 1995)).

> Among the factors deemed adverse to a respondent's application have
> been the nature and underlying circumstances of the exclusion ground at
> issue, the presence of additional significant violations of this country's
> immigration laws, the existence of a criminal record and, if so, its nature,
> recency, and seriousness, and the presence of other evidence indicative
> of a respondent's bad character or undesirability as a permanent resident
> of this country. . . .  Favorable considerations have been found to include
> such factors as family ties within the United States, residence of long
> duration in this country (particularly when the inception of residence
> occurred while the respondent was of young age), evidence of hardship to
> the respondent and family if deportation occurs, service in this country's
> Armed Forces, a history of employment, the existence of property or

14

business ties, evidence of value and service to the community, proof of a
genuine rehabilitation if a criminal record exists, and other evidence
attesting to a respondent's good character (e.g., affidavits from family,
friends, and responsible community representatives).

Matter of Marin, 16 I & N 581, 584-85 (B.I.A. 1978).

This court held an evidentiary hearing on December 21, 2004 to determine
whether there was a reasonable probability that Etienne would qualify for section 212(c)
relief.  In addition, the parties briefed the question of what sort of evidence is admissible
and probative for the purposes of this determination.  The court finds that the relevant
inquiry rests on the factual circumstances existing at the time that a final order of
deportation was entered against the defendant and that it ought not consider facts that
have arisen following the entry of a final order of deportation.  According to Copeland,
the relevant inquiry is "whether there is a reasonable probability that the alien would
have obtained relief had he or she been informed of, and sought, a Section 212(c)
hearing."  376 F.3d at 73 (emphasis added).  Therefore, facts that have arisen
subsequent to the time of a final order, both favorable and unfavorable to the
defendant, are not relevant to the consideration of whether the entry of a deportation
order against the defendant was fundamentally unfair.

Furthermore, the court is obligated to consider evidence that an immigration
judge would have found relevant and admissible during a section 212(c) hearing.  As
the government concedes, such evidence includes hearsay evidence where it is
probative and its use is fundamentally fair.  Felzcerek v. INS, 75 F.3d 112, 115 (2d Cir.
1996) ("The due process test for admissibility of evidence in a deportation hearing 'is

15

whether the evidence is probative and whether its use is fundamentally fair.'" (internal quotation omitted)).  The government concedes that the affidavit submitted by Marjorie Roc on behalf of the defendant is "technically admissible."  Government's December 28, 2004 Supp. Memo. [Dkt. No. 55], p. 1.  While the government's inability to cross-examine Ms. Roc may make the document less probative, the trier of fact, in this instance, the court, may consider that fact in its evaluation of the evidence submitted. In addition, Defendant's Exhibit 2, a report produced by the United States Department of State regarding human rights practices in Haiti, is similarly admissible.  While it, too, constitutes hearsay, it is probative with respect to the question of whether Etienne would have suffered hardship upon deportation, an inquiry relevant in the course of a section 212(c) hearing.  Lastly, Government Exhibit 6, the December 21, 2004 Affidavit of John P. Marley, an Assistant Chief Counsel with the Department of Homeland Security, U.S. Immigration and Customs Enforcement, is admissible despite the fact that it is hearsay.

In deciding the issue of fundamental unfairness, the government encourages this court to consider Etienne's arrest record, specifically three arrests that did not result in conviction.  Government's Ex. 3 - 5.  While an arrest report may be admissible in the course of a section 212(c) hearing, it is not irrefutable evidence that an individual engaged in prior criminal activity.  In the instant case, when questioned regarding the arrests that did not result in prosecution for any crime, Etienne denied any wrongdoing and provided explanations for the events that led to the arrests as well as events that

led to any decision not to pursue those arrests to a conviction or acquittal.

Furthermore, precedent disfavors lending substantial credit to arrests that do not result

in conviction, particularly where there is no supporting evidence of wrongdoing. "Just

as we will not go behind a record of conviction to determine the guilt or innocence of an

alien, so we are hesitant to give substantial weight to an arrest report, absent a

conviction or corroborating evidence of the allegations contained therein." In re

Catalina Arreguin de Rodriguez, 21 I & N Dec. 38 (B.I.A. 1995).

Upon consideration of all of the evidence, including Etienne's testimony at the

December 21 hearing and the court's assessment of his credibility, the court finds the

following facts. Etienne immigrated to New York with his father in 1980, when he was

six years old. Between 1980 and 1986 he lived in both Haiti and the United States. In

1986 he moved to the United States permanently. He has lived in Connecticut since

the age of eleven and attended middle and high school in Stamford, Connecticut. His

mother continues to live in the United States, recently moving to Miami, Florida. He has

both a brother and sister in the United States. He is engaged to Marjorie Roc and they

have three children, two of whom were alive at the time of the entry of his final order of

deportation. Ms. Roc and the couple's three daughters reside in Connecticut. Prior to

his incarceration and deportation, Etienne worked to support his fiancée and children by

working at a series of full-time jobs paying approximately eight dollars an hour. Upon

Etienne's deportation, his family suffered financial hardship. Ms. Roc and his children

could no longer afford the apartment in which they had been living and applied for

publicly subsidized housing.  Affidavit of Marjorie Roc [Def.'s Ex. 3] at ¶ 6.  They were able to obtain such housing but, according to Ms. Roc, the family currently lives in a less safe neighborhood and is unable to maintain the same financial situation they were able to enjoy prior to his deportation.  Additionally, while Etienne temporarily resided in Haiti following his deportation, Ms. Roc and his children could not assume the financial hardship of visiting him in Haiti.[2]  Etienne also testified that, during his incarceration prior to deportation, he made significant and successful attempts at rehabilitation.  He completed a series of drug rehabilitation programs while incarcerated and testified to his rehabilitation.

A number of the favorable factors, relevant to determining whether 212(c) relief would have been granted, apply to Etienne.  These include "family ties within [the United States]; residence of long duration in the country; evidence of hardship to the alien and alien's family upon deportation . . . . [and] employment history."  Lovell, 52 F.3d at 461.  It is notable that between 1989 and 1995, over half of all section 212(c) applicants were granted relief from deportation.  See INS v. St. Cyr, 533 U.S. 289, 296 n.5 (2001).  The defendant provides anecdotal evidence that in Connecticut, the percentage was yet higher.  All of these applicants had been found guilty or plead guilty to criminal offenses that subjected them to deportation.  Etienne's criminal history must

---

[2]  An immigration judge would not have had the benefit of knowing what would have happened to Etienne's family upon his deportation in the context of a 212(c) hearing. Nevertheless, the financial hardship that resulted from a two-income household becoming a one-income household was certainly foreseeable and relevant, as was the cost of family visits to Etienne in Haiti.

18

be considered in this light.  Etienne has extensive family ties in the United States.  He has lived in the United States since 1980.  In 2000, he had resided in the United States for twenty years.  Most significantly, at the time he ought to have been allowed a 212(c) hearing, he had two children and a fiancée with whom he lived and for whom he provided financially.  That his deportation could create significant hardship to his family was foreseeable and was a relevant factor with respect to a section 212(c) hearing.  To the extent that Etienne may not have provided evidence of additional favorable factors, "the absence of those additional ties in themselves does not negate the weight to be accorded an applicant's long residence in this country."  In re Catalina Arreguin De Rodriguez, 21 I. & N. Dec. 38 (B.I.A. 1995).

The government argues that "aliens convicted of serious drug offenses are required to show unusual or outstanding equities before discretionary relief under section 212(c) will be further considered."  Matter of Burbano, 20 I & N Dec. 872, 879 (B.I.A. 1994).  Factors that have been found to constitute such "unusual or outstanding equities" include lengthy legal residency in the United States and the residence of one's children in the United States.  For example, one section 212(c) applicant, whose deportation was based on convictions for conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine, was found to have demonstrated that outstanding equities existed in his favor because he had resided in the United States for twenty years and because his mother, siblings, and two children resided here as well.  Matter of Coelho, 20 I. & N. Dec. 464, 468 (B.I.A. 1992).  Another

19

applicant, whose criminal record spanned over ten years, demonstrated that outstanding equities existed where he had resided in the United States for twenty-two years; his mother and siblings also resided in the United States; and his wife and four children resided in and were citizens of this country.  Matter of Edwards, 20 I. & N. Dec. 191, 197 (B.I.A. 1990).  In that case, the alien's first criminal conviction occurred nine years after he first lawfully entered the country.  The relevant time period for the purposes of evaluating his section 212(c) petition was not, however, nine years, but the full length of his residency in the United States, including that time period following a conviction.

Etienne need not prove that he would have received relief under section 212(c). He need only demonstrate that there is a "reasonable probability" that he would have been entitled to such relief.  The court's balancing of favorable factors–family ties, substantial rehabilitation, and work history–against adverse factors–evidence of criminal history and bad acts–tips in favor of Etienne.  This court finds that "there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted Section 212(c)relief."  Copeland, 376 F.3d at 73.  Furthermore, finding that there is a reasonable probability that Etienne could demonstrate that outstanding equities existed in his favor, the court need not reach the question of whether that higher standard applies to an alien convicted of possession with intent to distribute cocaine base.

20

**IV.    CONCLUSION**

For the foregoing reasons the defendant's Motion to Withdraw Conditional Plea [Dkt. No. 37] and Motion to Reconsider Court's Ruling Denying Defendant's Motion to Dismiss [Dkt. No. 40] are GRANTED.  The indictment is DISMISSED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 14th day of January, 2005.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge